Michael HOUSTON, Plaintiff,

v.

UNITED STATES of America,
Defendant.

PLANNED INVESTMENTS, INC. a
Michigan Corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. G86–937 CA5, G86–938 CA5.

United States District Court,
W.D. Michigan, S.D.

March 28, 1988.

Thomas A. Klug, Okemos, Mich., for plaintiffs.

S. Hollis Fleischer, Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## OPINION OF THE COURT

BELL, District Judge.

In these two consolidated actions under 28 U.S.C. § 1346(a)(1), plaintiffs Michael Houston and the company of which he was President, Planned Investments, Inc., contest a penalty assessed by the Internal Revenue Service. Now before the Court are the parties' cross-motions for summary judgment pertaining only to *Planned Investments, Inc. v. United States*, G86–938 CA5.

The subject penalty was assessed by the Internal Revenue Service ("IRS") in March, 1986. The penalty is based on the charge that Planned Investments participated in sales of an abusive tax shelter, subject to penalty under § 6700(a) of the Internal Revenue Code, 26 U.S.C. § 6700(a). Planned Investments admits to having engaged in the charged conduct in December, 1982, but challenges the penalty on several grounds: (1) that the notice of penalty is invalid and unenforceable because it fails to adequately set forth the time period in which the charged conduct is alleged to have occurred; (2) that the assessment is barred by the applicable statute of limitation; and (3) that the penalty amount is the product of an erroneous method of computation. The parties have entered into stipulations of fact, leaving only questions of law for the Court to resolve.

### ADEQUACY OF NOTICE

The notice of penalty charge received by Planned Investments provides, "tax period:

December 31, 1985." Planned Investments contends this is inadequate notice that he is being charged a penalty for conduct which occurred exclusively in December, 1982.

In general, a § 6700 penalty is to be collected upon notice and demand in the same manner as taxes. 26 U.S.C. § 6671. The Internal Revenue Code does not, however, define the precise form the notice should take. Indeed, case law acknowledges that no particular form is required for a valid notice of deficiency. *Scar v. Commissioner*, 814 F.2d 1363, 1367 (9th Cir.1987); *Abrams v. Commissioner*, 787 F.2d 939, 941 (4th Cir.1986), *cert. denied* — U.S. —, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986); *Benzvi v. Commissioner*, 787 F.2d 1541, 1542 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986). Nevertheless, the notice must satisfy certain "substantial requirements." *Abrams, supra,* 787 F.2d at 941. It appears to be generally recognized that notice should, at a minimum, indicate that a deficiency has been determined, the tax period involved, and the amount of the deficiency. See *Scar, supra,* 814 F.2d at 1367; *Abrams, supra,* 787 F.2d at 941; *Benzvi, supra,* 787 F.2d at 1542. The cases reflect concern that the notice should impart enough information to provide the taxpayer with "fair notice." *Scar, supra,* 814 F.2d at 1368.

█ The instant notice of penalty charge is said not to have provided "fair notice" inasmuch as it fails to clearly and correctly specify the time period involved. The only reference to time period on the face of the notice consists of the words: "tax period: Dec. 31, 1985." Viewing this language charitably from a common sense perspective, one might construe it as meaning the tax year or calendar year ending December 31, 1985, for the IRS cannot reasonably be deemed to have charged a penalty for a 24–hour period.

A further clue as to the time period involved is found in the penalty provision cited in the first paragraph of the notice.

Referring to the language of § 6700(a) of the Internal Revenue Code, the notice indicates: "The penalty is the greater of $1000 or 20% of the gross income derived or to be derived from the activity." This language was added by 1984 amendment and became effective on July 19, 1984. Pub.L. No. 98–369, Title I, § 143(a), 98 Stat. 682 (1984).[1] Thus, the earliest possible beginning point of the applicable time period would seem to be July 19, 1984.

Viewing the only two clues available on the face of the notice in conjunction with each other, the time period involved could be most broadly construed as running from July 19, 1984 to December 31, 1985. Yet, even this period is a matter of pure speculation.

In response to the notice, after having paid $150 of the charged penalty, Planned Investments filed a Form 843 Claim for Refund with the Department of Treasury. Among other arguments, presented at length in a six-page attachment, Planned Investments called into question the time period involved. Unfortunately, the ruling of the Department of Treasury Regional Appeals Office, denying the claim, shed little light on the question. The ruling consists of a one-page letter, one short paragraph of which addresses the merits of Planned Investments' claim. The only reference to the time period involved provides: "Tax period Ended: Related to 1985 Form 1040." This language merely compounds the confusion. While it suggests the time period involved is that period covered by Planned Investments' 1985 Form 1040, the fact is Planned Investments did not file a 1985 Form 1040. A Form 1040 is an *individual* income tax return. Planned Investments, a corporation, has not filed a Form 1040 for 1985 or any other year. It appears the gross receipts which form the basis for the subject penalty were reported by Planned Investments in its 1983 U.S. Corporation Income Tax Return, Form 1120. Thus, the Department of Treasury

---

1. Prior to the 1984 amendment, the penalty was "the greater of $1000 or *10%* of the gross in-          come."

letter denied offers no guidance as to the time period involved.

It does not appear Planned Investments has ever received "fair notice" of the time period for which the penalty is being charged. It has been stipulated by the parties that the conduct which is subject to penalty occurred in December, 1982. Yet the notice of penalty charge, patently ambiguous and confusing, cannot by any objective standard of reasonableness be construed as pertaining to conduct which occurred in 1982 and income which was received in 1983. Moreover, in spite of Planned Investments' March, 1986 objection to the notice, the IRS has not made any effort to correct the error or ambiguity.

The Government makes two arguments in defense of the notice. First, the notice reference to December 31, 1985, is said to represent merely the end date of the applicable time period. The beginning date is said to be September 5, 1982, the effective date of the law which first brought § 6700 into existence. Pub.L. No. 97–248, Title III, § 320(a), 96 Stat. 611 (1982). Thus, the Government contends, Planned Investments' 1982 promotion of an abusive tax shelter falls within this 40–month period and is properly subject to penalty.

Even assuming the IRS may properly assess a penalty for conduct occurring at any time within such a long period, the fact remains the IRS did *not* provide Planned Investments with notice that this was the time period involved. The taxpayer cannot reasonably be expected to have deduced from the notice provided that it was being penalized for conduct occurring as early as September 4, 1982. This is all the more true where, as indicated *supra,* the charged penalty is premised upon code language which did not become effective until July 19, 1984. To accept the Government's strained construction of "tax period: Dec. 31, 1985," would be to accept that the notice is internally self-contradictory, and still ambiguous.

The Government's second argument is no more persuasive. It is submitted that even if the notice is deemed defective, the defect is immaterial, because Planned Investments was not misled or prejudiced thereby. The argument is not without support. For instance, in *Sanderling, Inc. v. Commissioner,* 571 F.2d 174 (3rd Cir.1978), the Court held that a deficiency notice which erroneously indicated the taxable period was March 1, 1968 to February 28, 1969— instead of March 1, 1968 to January 22, 1969—was nonetheless valid. The defect was held to be inconsequential, because the notice cited a definite one-year period and both the taxable event and correct taxable period were included therein. The taxpayer had not been misled as to the proper year involved. The notice was technically defective only in that it cited a period longer by one month than the correct period.

Here, in contrast, the notice expressly refers to a time period of one day in language which could conceivably be construed, as discussed *supra,* as referring to a 12–month period or perhaps an 18–month period. Beyond that, the Government urges the Court to adopt an even more expansive construction, such that the noticed time period would be deemed to be a 40–month period. In view of these four possible widely varying constructions, only the most strained of which would encompass the charged conduct, the instant notice cannot be deemed to satisfy the "fair notice" requirement. The notice of penalty charge does not merely bear a technical or clerical defect of no substantial consequence, such as was present in *Sanderling.* Rather, considering the notice in conjunction with the IRS's continuing failure to correct and the Treasury Department's perfunctory denial of refund, it appears Planned Investments has never received fair notice of the time period involved.

■ The Government protests, urging the Court to apply a pure subjective test. In spite of the notice defect, the Government contends, the fact remains that Planned Investments actually knew when the charged conduct occurred and has had a full opportunity to contest the charge. Yet, clearly, a taxpayer's subjective knowledge cannot excuse the Government from its obligation to provide fair notice before

imposing on the taxpayer the obligation to contest the penalty in potentially costly litigation. To indulge such reasoning would be to substantially abolish the fair notice requirement.

In *United States v. Lehigh*, 201 F.Supp. 224 (W.D.Ark.1961), the court was confronted with similar facts. The taxpayer received a notice of deficiency for tax year 1954 based upon taxable income actually received in 1953. The court found that notice, to be valid, either must state the taxable period or at least give enough information that the taxpayer reasonably could not be deceived as to the taxable period. The court went on to hold the notice invalid in spite of the taxpayer's subjective knowledge of the error, because the taxpayer did not necessarily know that it was a mere typographical error. The taxpayer was held not to have had any duty to inform the Government of the error. The Court refused to apologize for permitting the taxpayer to prevail based on a technical defense, observing the Government, too, must bear the consequences of its neglect. 201 F.Supp. at 233–234.

The *Lehigh* ruling is, of course, not controlling upon this Court. However, the same reasoning applies with even greater force here. For here, Planned Investments raised the time period questions almost immediately after receiving the notice of penalty charge. The IRS was apprised of the ambiguity or error and yet made no effort to correct it. Cf. *Allan v. United States*, 386 F.Supp. 499, 503–04 (N.D.Tex.1975) (distinguishing *Lehigh* based on later correction of clerical error in notice). Furthermore, the Department of Treasury Regional Appeals Office offered absolutely no guidance. Simply put, the Government's conduct in this case appears to have been not merely neglectful, but slipshod. In view of the amount of money at stake, this is inexcusable.

Accordingly, the Court finds the notice of penalty charge invalid and unenforceable. As to this point, there is no genuine issue of material fact and Planned Investments is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Having reached this re-

sult, it is unnecessary to address the statute of limitation and method of computation issues, for without valid notice, an essential prerequisite to imposition of the § 6700 penalty is lacking. Planned Investments is entitled to judgment in its favor, cancellation of the penalty charged, and refund of the $150 that has been paid. An order consistent with this Opinion shall issue forthwith.